*618 OPINION.
ITaReon:
(1) In determining the deficiency for 1936 of Potter, respondent added $3,228.75 to income as interest received by petitioner on the note of A. E. Potter estate. In his brief respondent abandoned this item. The facts, as found, show that Potter received interest on the Potter estate note in 1936 in the amount of $1,653.75, only, which he included in income in his return. Eespondent erred in adding $1,575 [1] to Potter’s income in 1936 as interest received. That amount was received and reported as income by Potter in his returns for 1931 and 1932.
(2) In determining the deficiencies for 1935 and 1936 of Potter, respondent increased his income by $30 for dividends received in 1935 (dividends of Anne reported in her return), and increased his income in 1936 by $76[2] and $66, dividends of Anne and Justin, Jr., respectively, reported in their returns. Eespondent has not referred to these three adjustments in his brief, and, apparently, has abandoned them. The facts, as found, show that the miscellaneous stocks on which these dividends were paid were the property of each child, purchased with their money, the certificates standing unendorsed in their respective names. These dividends were the income of each child and were *619 not Potter’s income. Respondent erred m 'adding the above amounts to Potter’s income in 1935 and 1936.
(3) The main question in each proceeding is whether or not valid gifts were made to each child in 1934 of interests in the Nashville Coal Co. partnership so that the children acquired present property rights, and the income and other property derived therefrom were the separate property and income of each child.
The respondent’s argument in his brief is devoted to the broad aspects of the question. He argues that the dominion and control exercised by Potter over all the income and property alleged to have become the property of the children was such that the gifts, if any were effectively made, did not bring about any substantial change in the economic interests of the donors after the alleged gifts were made. Respondent’s position is that the circumstances here require application of the rationale of Helvering v. Clifford, 309 U. S. 331.
Before discussing the validity of respondent’s broad argument, consideration must be given first to the narrower question of whether or not valid gifts of interests in the partnership were made to the children.
The facts are not disputed. The evidence offered by the petitioners is not contradicted or even questioned by respondent. The petitioners have presented evidence which is as complete as it could be. The problem is one of examining all of the evidence and determining the legal effect. Read in its entirety, the record does not reveal any plan or effort on the part of the petitioners to circumvent the burden of taxation. Scrutiny of the facts means no more here than setting forth the facts, which has been done fully in the findings of fact. They are not repeated here. The facts show that the petitioners intended to make irrevocable gifts of a part of their respective interests in the partnership to the children. Advice of competent counsel was sought and followed so that the disability of the donees, residing in their infancy, would be met, and would not later raise any question as to the effectiveness of the gifts. The gifts were made orally, each child being told of the gift. The petitioners had the right to transfer all or part of their interests in the partnership to third parties without working a dissolution of the partnership under the Uniform Partnership Act, which has been adopted by Tennessee (Michie’s Tennessee Code of 1932, par. 7841-7882; Modern Law of Partnership, Scott Rowley, par. 552), and the minor children could become members of the partnership. Parker v. Oakley (Tenn. Ch. App.), 57 S. W. 426; Frank E. Eyestone, 12 B. T. A. 1232, 1236; Lindley on Partnerships, par. 74; Rowley on Partnerships, supra, par. 188. All of the partners consented to and agreed orally that the two children could become members of the partnership, and permanent entries in the permanent books of the partnership capital *620 account were made showing the transfers of the interests from the petitioners to the children as of January 1, 1934, the entries being made during January. Gift tax returns were filed and gift tax was paid upon the gifts. Thereafter, the children were regarded as partners and they shared in the partnership earnings. No record was made with any state or county official of a change in the membership of the partnership because such record is not required by Tennessee law. See William W. Parshall, 7 B. T. A. 318. When it was decided to form the corporation and transfer partnership property to it, a bill was filed in the Chancery Court to adjudicate the property rights of the minors in the partnership property, as well as to protect their interests, and the court ratified and approved the contract between the partnership and the corporation for the children, noting that the partnership was composed of the children as well as the adult partners by naming all of the persons as members of the partnership.
It is essential to the validity of a gift that the donor not only have a manifest intention to make the gift, but that the subject matter of the gift, or something symbolic thereof, be delivered to the donee, or someone acting for the donee, so that the thing given is put definitely and irrevocably beyond the ownership and control of the donor. There can be no doubt here of the clear intent of the petitioners to make the gifts, irrevocably, in view of the ample record on the point. Nor does the record leave doubt on the points of delivery and acceptance. A definite agreement was made by and between all of the partners that the two children should become partners, and petitioners agreed to this in the dual capacity of partnership members, for themselves, and of natural guardians at law, for the children. The children were told that they were to become members of the partnership. Entries were made in the partnership capital accounts under written directions from Potter. The subject matter of the gifts was intangible. The method of effecting technical “delivery” must be considered with regard for all of the circumstances. It is concluded that the donors took substantial steps in carrying out a verbal conveyance of personal property, effective to vest title in each child. Tatum v. Jamison, 2 Humph. 298; Voltz v. Treadway & Marlatt, 59 Fed. (2d) 643; J. M. Kessler, 31 B. T. A. 849; William W. Parshall, supra; Estate of John Barnes, Jr., 7 B. T. A. 924; B. M. Phelps, 13 B. T. A. 1248; Charles W. Crane, 19 B. T. A. 577; Walter W. Moyer, 35 B. T. A. 1155.
The cumulative effect of all of the evidence is that valid and irrevocable gifts of partnership interests were made to the children on January 1, 1934, and that the children were, thereafter, members of the partnership.
The factor of the dominion and control exercised by Potter over all of the moneys, notes, and stocks which thereafter came to the children, as well as his investment and reinvestment of moneys, is not *621 overlooked. The element of Potter’s control does not weigh against petitioner’s case in so far as the making of effective gifts, in praesemti, is concerned. The evidence is clear that none of the money or property derived from the gifts to the children, and which went to them by checks, notes, and securities, made in their respective names, was ever used by petitioners for their own uses or for the support of the children. Mrs. Potter did not exercise any control over the property or income of the children. Potter managed all of the business and financial matters of and for his wife and children. But his control over the fruits of the gifts to the children was that of their natural guardian at law. Under the statutes of Tennessee the parents are the natural guardians of their children. Tennessee Code of 1932, sec. 8463. As such, they are equally charged with their care, education, support, and also with the “care, management, and expenditure of their estates.” The Board has held that, when a parent, after making a gift to an infant, thereafter handles the receipt of proceeds and manages the property for the child, such conduct by the adult donor with respect to property given to a minor is entirely consistent with the making of an effective gift in jurisdictions where the parent is the natural guardian at law of the donee. The parent holds as natural guardian and the possession is the infant’s. H. C. Priester, 33 B. T. A. 230; Harry C. Moores, 3 B. T. A. 301; Frank J. Vlohek, 7 B. T. A. 1244. Potter handled all moneys and other property for the children in such way that the propriety of his conduct •is not and can not be questioned. Records were kept' by him of all receipts and disbursements on behalf of the children. Under all the facts here, it is not material that he did not open separate bank accounts in the names of the children. While such procedure would have eliminated some of respondent’s questioning of the status of the matter, in general, Potter’s counsel advised Potter that the procedure of depositing proceeds from checks made payable to the children (and all were so made) in his own bank account was all right. Potter regarded this account as a temporary resting place for all of the children’s money until he could invest it for them. There was no misuse by Potter of this procedure, nor of his broad powers of control, as guardian. All that petitioner did in exercising dominion and control over the fruits of the gifts of partnership interests to the children is consistent with the view that the partnership interests and all money and property resulting therefrom belonged to the children. H. C. Priester, supra.
The following cases cited by respondent are distinguishable under the facts of each case and, further, the rationale of these cases does not apply to these proceedings under their distinct facts: Burnet v. Leininger, 285 U. S. 136; Weil v. Commissioner, 82 Fed. (2d) 561; certiorari denied, 299 U. S. 552 (where, among other distinguish *622 ing facts, the father was not the guardian of his children under the law of Alabama) ; Harry F. Canelo, 41 B. T. A. 713; James L. Robertson, 20 B. T. A. 112; Higgins v. Smith, 308 U. S. 473; S. A. MacQueen Co. v. Commissioner, 67 Fed. (2d) 857; Shoenberg v. Commissioner, 77 Fed. (2d) 446; Gregory v. Helvering, 293 U. S. 465; Griffiths v. Commissioner, 308 U. S. 355; Hellebush v. Commissioner, 65 Fed. (2d) 902.
Whether or not the donees in these proceedings became members of the partnership, or owners of interests in the partnership, or both, is a matter of local law. Blair v. Commissioner, 300 U. S. 5. ite-spondent has not cited any law to controvert the recognition to be given to the decree of the Chancery Court at Nashville dated July 17, 1936. The court found that the children were members of the partnership under the gifts from their parents, incorporating the master’s report of July 16, 1936, in the decree. The court ordered the corporation to deliver its promissory notes to each child and appointed Potter their trustee to receive interest on the notes. Under that decree, there can be no holding other than that the interest paid on the notes to the children in 1936 was their income, and that the notes were their property. Clearly, respondent erred in adding the interest to Potter’s income in 1936.
Whether or not the decree of the Chancery Court is dispositive of the matter of whether valid gifts of the partnership interests were made in 1934 to the children, so that the same force is to be given here to the holding of a state court, as was done in the Blair case, we need not decide, in view of all the other evidence which supports a holding for the petitioners on the point. However, we give much weight to that decree as evidence of the donative intent of petitioners and their conduct with respect to the subject matter of the gifts after making the gifts.
There remains the question to which respondent’s chief argument is addressed, namely whether or not the rule of Helvering v. Clifford, 309 U. S. 331, applies here. ^Respondent's argument is that the petitioners did not part with the substantial attributes of ownership over the property (the partnership interest), essential to nontaxability under section 22 (a), because of the control exercised by Potter over all receipts of money and his power to invest and reinvest proceeds and manage the property involved, and because he deposited all receipts of money in his own bank account. In other words, was the whole situation such that for purposes of taxation petitioners continued to be the owners of the property given to their children so that income derived from the property was the income of each petitioner under section 22 (a) of the pertinent revenue acts? In the Cliford case it was not the fact alone that the taxpayer’s wife was the beneficiary of a short term trust, that there was a family relation *623 ship, which dictated the conclusion reached by the Supreme Court;rather there were combinated powers over income of a trust retained by the donor which so diluted the economic consequences of the gift in trust that the donee, in reality, received no certain thing, and the donor retained the status of owner of the property for all practical' purposes. “In substance, his control over the corpus was in all essential respects the same after the trust was created, as before”, and that “control” was self-prescribed.
In this case the donors did not make gifts with strings attached. No powers were reserved as conditions of the gifts. The gifts effected a substantial reduction in the property of each petitioner, and real changes in ownership of the subject matter of the gifts. The control which Potter exercised was not self-prescribed. Bather it was imposed upon him by law. He was a natural guardian at law of each child. When the children attain their majority, Potter’s control ends. The kind of dominion and control over property given to an infan^i which is exercised'by a natural guardian at law differs from the kind of dominion and control with which the Court was concerned in the Clifford case. Under the facts neither petitioner remained the owner of the partnership interests after the gifts were made, giving consideration to the broad provisions of section 22(a). The management by Potter as a guardian at law of the minors was not a retention of command over income incident to ownership. There seems to be no statutory basis for treating the income as that of the grantors under section 22(a) merely because one donor managed all income and property for minors incapable of performing that function. Commissioner v. Branch, 114 Fed. (2d) 985; Jones v. Norris, 122 Fed. (2d) 6. Our appraisal of the facts leads to the conclusion that petitioners made irrevocable gifts of the interests in the partnership without retention of any power to revest the property or the income in themselves. With respect to all of the items of income involved — partnership distributions and earnings, interest, dividends, and capital gains — the rule which applies here is that tax liability on income attaches to ownership of the property producing the income. The rule of the Clifford case is not applicable here. Blair v. Commissioner, supra; Julius E. Lilienfeld, 35 B.T.A. 391.
It is held that petitioners are not taxable for the income derived from the interests in the partnership given to the children. Determination of the main question disposes of all the other adjustments made by the respondent involved in the issues before the Board. The children of petitioners owned the Nashville Coal Co. notes issued to them, the proportion of the preferred and common stock of Dawson Daylight stock purchased with their funds, and other securities in which their funds were invested, and they were members of the Potter-Wilson partnership. Petitioners are not taxable on the interest, divi *624 dends, earnings, and profits in question. The findings of fact cover these items in detail.
Eespondent’s determinations are reversed.
Because of stipulations relating to increases in the amounts of the earnings of the Nashville Coal Co. partnership in various years, it appears that recomputations under Bule 50 may be necessary. Accordingly,

Decisions will be entered wilder Bule 50.

 In the recomputation under Rule 50 attention should be given to error in the computation in the deficiency notice where it appears that total interest involved in 1936 is $6,228.75. The correct amount is $7,281.93, consisting of $900 on Potter’s note from the coal corporation; and $1,053.18 from Edward Potter, neither of which is in dispute; and $2,100 on the children’s notes from the corporation; and $3,228.75 on the Potter estate note.

 The correct amount of Anne’s dividends in 1935 from the miscellaneous stocks is $75.